■ MILDRED VODERY, Appellant, v NIAGARA MOHAWK POWER CORPORATION, Respondent.—Appeal from a judgment of the Supreme Court in favor of defendant, entered June 6, 1974 in Columbia County, upon a dismissal of the complaint by the court at a Trial Term at the close of plaintiff's case. The plaintiff Mildred Vodery on January 14, 1972 saw smoke coming from her cellar. She went into the cellar to investigate and found smoke and fire coming from the furnace. In her rush to get out of the cellar she fell, sustaining injury to her left knee. About an hour prior to this incident, employees of defendant Niagara Mohawk Power Corporation had turned off the power to plaintiff's residence in order to replace a transformer. The fire apparently started when the power was restored. Plaintiff proceeds upon the theory that low voltage produced an insufficient spark to completely burn the oil in the chamber of her furnace, thereby causing an accumulation of oil in said chamber, and that upon restoration of full power after it had been turned off, the resulting spark ignited the accumulated oil with explosive force, causing the fire. Defendant is therefore alleged to have been negligent in both turning off the power and turning it on without notice to plaintiff. Plaintiff relied primarily on the testimony of two oil burner servicemen, Belknap and Kelley. Belknap had serviced plaintiff's furnace on two occasions the previous December, one of which had also followed an explosion in the furnace. Taking Belknap's testimony in a light most favorable to plaintiff, as we must do in reviewing a dismissal for failure to make out a prima facie case, it can be summarized briefly by stating that the furnace was generally in good working order and that the fuel pump was operating at the prescribed pressure following his service call on December 23, 1971. In a similar vein, plaintiff testified to having had no trouble with the furnace between December 23, 1971 and January 14, 1972.

However, when asked if he had an opinion as to the cause of the explosion, Belknap could only state that "there were a number of things that could have caused" it. No testimony was elicited tending to show that, prior to the explosion, there was excess oil in the chamber. Kelley was called as plaintiff's expert witness. He initially testified that two things could cause an accumulation of oil in the burner of a furnace such as plaintiff's: low voltage, preventing a spark sufficient to ignite oil being pumped into the chamber, or dirt in the pump cutoff valve, allowing oil to drip. Subsequently, he was asked the following hypothetical question: "Assuming that on December 23, 1972, the furnace in the home of the plaintiff Mildred Vodery was serviced by a qualified oil burner mechanic * * * and that thereafter Mrs. Vodery had no problems with the oil burner, the oil burner went off and on and at no time were there any problems nor was there any fire, and assuming that during the period between December 23, 1972, and January 14, 1973, Mrs. Vodery experienced problems with her lights and with lines in her TV set, and assuming further that on January 14, 1973, the power was shut off to the Vodery home by Niagara Mohawk, the defendant, in order to change a transformer from a 10 to 25 size, and that thereafter when the power was turned back on by the defendant Niagara Mohawk, a fire occurred in the Vodery furnace; do you have an opinion which you can state with reasonable certainty as to the cause of the fire?" The trial court sustained an objection to this question, taking the view that there was an insufficiency of facts upon which an opinion could be predicated. When the plaintiff thereafter rested, the court dismissed the complaint, finding that the fire might have ensued for many reasons and there was not any proof of low voltage either before December 31 or between that date and the date of the fire. Plaintiff contends on appeal that it was error to refuse to permit Kelley to answer the hypothetical question posed. It is not disputed that, in the absence of expert opinion on the cause of the fire, a prima facie case has not been made out. We affirm, agreeing with the ultimate conclusion of the trial court and differing only slightly in reasoning. Plaintiff had testified that at various times in the few weeks preceding the accident, she had had trouble with her lights and her television set. Taken together with the fact that defendant was installing a larger transformer, the effect of which is to increase voltage, a jury might have reasonably inferred that *at times* prior to January 14, 1972, there was indeed low voltage. Thus, we disagree with the trial court's statement that there was no proof of low voltage either prior to or after December 31, 1971. However, proof of low voltage *at times* is not enough. While there was testimony that low voltage *could* cause oil accumulation, there is no proof whatsoever from which a jury could do other than speculate as to whether there was *in fact* a potentially explosive accumulation of oil prior to the shut-off of power on January 14, 1972. While low voltage on earlier days, if it be assumed, might have caused oil accumulations, a jury could again do nothing but speculate as to whether such accumulations had occurred and whether or not, when voltage was stepped up, such accumulated oil had been burned off without incident. Kelley could only have testified that low voltage followed by a shutoff and restoration of power caused the fire by speculating that there was an accumulation of oil. The court's refusal to permit such testimony was proper, and we agree with the ultimate conclusion that plaintiff failed to prove that there was a causal relationship between defendant's activities and the fire. Judgment affirmed, without costs. Herlihy, P. J., Greenblott, Sweeney, Kane and Reynolds, JJ., concur.